## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 09 2016, 8:06 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Randy M. Fisher
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Khampaseuth O. Lothvilaythong,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 9, 2016<br><br>Court of Appeals Case No.<br>02A03-1507-CR-920<br><br>Appeal from the Allen Superior<br>Court<br><br>The Honorable Frances C. Gull,<br>Judge<br><br>Trial Court Cause No.<br>02D04-1407-FC-191 |

**Bradford, Judge.**

## Case Summary

On May 27, 2015, Appellant-Defendant Khampaseuth O. Lothvilaythong was convicted of one count of Class A felony child molesting and one count of Class C felony child molesting for acts committed against his daughter. Lothvilaythong was subsequently sentenced to an aggregate term of thirty-five years, all of which was ordered to be executed in the Department of Correction ("DOC"). On appeal, Lothvilaythong contends both that the trial court abused its discretion in sentencing him and that his sentence is inappropriate. Concluding otherwise, we affirm.

# Facts and Procedural History

Lothvilaythong was born on April 2, 1978. He is the father of J.L., who was born on February 23, 2006. At all times relevant to the instant appeal, J.L. lived with her mother but had overnight visitation with Lothvilaythong every other weekend.

More than once during weekend visitations occurring between January of 2011 and March 11, 2012, Lothvilaythong pulled J.L.'s pants and underpants down and tickled her on her "private spot" where she would "pee." Trial Tr. p. 34. Also during this period, Lothvilaythong insisted that J.L. bathe at his home. After J.L. finished bathing, Lothvilaythong would "smell [her] private and then kiss it" with his lips. Trial Tr. p. 37. Lothvilaythong told J.L. that if she told on him, he would spank her and lock her in a closet.

[4] Beginning when J.L. was between three and one-half and four-years old, she "always" told her mother that she had "butterflies in her stomach" before her visits with Lothvilaythong. Trial Tr. p. 76. J.L would "scream at the top of her lungs that she did not want to go with [Lothvilaythong]." Trial Tr. p. 77. At the time, however, J.L. would not tell her mother what had happened to make her not want to go to Lothvilaythong's home. J.L.'s mother confronted Lothvilaythong, who denied that he had ever touched J.L. in an inappropriate manner.

[5] When J.L. was six years old, J.L.'s mother convinced J.L. to "tell [her] what was going on." Trial Tr. p. 78. J.L. reported that Lothvilaythong had tickled her "coo-coo," a term J.L. used to describe her genitals. Trial Tr. p. 78. J.L.'s mother confronted Lothvilaythong, who again denied ever having touched J.L. in an inappropriate manner. The next day, J.L.'s mother scheduled a doctor's appointment for J.L. during which she reported the possible abuse. The matter was subsequently reported to the Department of Child Services ("DCS").

[6] On July 9, 2014, Appellee-Plaintiff the State of Indiana (the "State") charged Lothvilaythong with Class C felony child molesting. The State subsequently amended the charging information to include a charge of Class A felony child molesting. On May 27, 2015, a jury found Lothvilaythong guilty of both Class A felony and Class C felony child molesting.

[7] On June 26, 2015, the trial court sentenced Lothvilaythong to a term of thirty-five years for the Class A felony conviction and a term of five years for the

Class C felony conviction. The trial court ordered the terms "to be served concurrently" for an aggregate term of thirty-five years, all of which was to be executed in the DOC. Sent. Tr. p. 12. This appeal follows.

# Discussion and Decision

On appeal, Lothvilaythong contends that the trial court abused its discretion in sentencing him. Lothvilaythong also contends that his aggregate thirty-five-year sentence is inappropriate in light of the nature of his offenses and his character. We will discuss each in turn.

# I. Abuse of Discretion

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted).

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under

those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id*. at 490-91.

[10]   During the sentencing hearing, Lothvilaythong argued, and the trial court found, that his lack of criminal history was a mitigating factor. Lothvilaythong claims on appeal, however, that the trial court abused its discretion by failing to find the following to be additional significant mitigating factors: (1) the fact that he successfully completed programming through a parallel investigation by DCS into the matter and (2) his immigration status and the hardship associated with his possible future deportation.

[11]   The finding of mitigating factors is discretionary with the trial court. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993) (citing *Graham v. State*, 535 N.E.2d 1152, 1155 (Ind. 1989)). The trial court is not required to find the presence of mitigating factors. *Id*. (citing *Graham*, 535 N.E.2d at 1155). Further, the trial court is not required to weigh or credit the mitigating evidence the way appellant suggests it should be credited or weighed. *Id*. (citing *Hammons v. State*, 493 N.E.2d 1250, 1255 (Ind. 1986)). Likewise, if the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist. *Id*. (citing *Hammons*, 493 N.E.2d at 1254-55).

# A. Completion of DCS Programming

[12] Lothvilaythong argues that the trial court abused its discretion in failing to find that he had completed certain services offered through DCS to be a mitigating factor. Lothvilaythong does not cite to any case law indicating that completion of DCS programming should be considered as a valid mitigating factor but argues that, in this case, his "successful completion of [the DCS] programming was significant and clearly supported by the record and therefore should be considered a mitigating circumstance." Appellant's Br. p. 10. Lothvilaythong, however, fails to explain why his completion of the DCS programming was significant.

[13] In addition, Lothvilaythong relied on argument by his trial counsel at sentencing as the evidence of completion which was the following:

> I spoke with the attorney that represented him in [the DCS] proceedings yesterday and he confirmed what was already represented to me previously by my client, that he had successfully negotiated all the programs that [DCS] had put in place for him as a result on their investigation.

Sent. Tr. p. 5. In sentencing Lothvilaythong, the trial court specifically stated that it did not find the fact that Lothvilaythong "successfully completed the requirements of the family court" to be a mitigating factor. Sent. Tr. p. 11.

[14] In light of the fact that Lothvilaythong has failed to explain how his completion of DCS programming was significant, presented little evidence indicating that he had actually completed the required DCS programming, or failed to cite to

any relevant authority indicating that his completion of DCS programing should be considered to be a mitigating factor, we conclude that Lothvilaythong has failed to demonstrate that the trial court's finding regarding his completion of DCS programming constituted an abuse of discretion.

## B. Immigration Status and Potential Future Deportation

[15] Lothvilaythong also argues that the trial court abused its discretion in failing to find his immigration status and the hardship associated with his possible future deportation to be a mitigating factor. In making this argument, Lothvilaythong did not present any evidence demonstrating that he would be, or would likely be, deported as a result of his conviction. His counsel merely noted that it was a possibility and argued that Lothvilaythong's possible future deportation would amount to a hardship on him.

[16] On appeal, Lothvilaythong reiterates the argument that his possible future deportation would amount to a hardship to him. He also argues that because an individual's trial counsel can be found to be ineffective if said counsel fails to advise their non-United States citizen client that pleading guilty may carry the risk of deportation, one's immigration status and the potential for possible future deportation should be considered a mitigating factor. We disagree.

[17] Regardless of whether a non-citizen is in the United States legally or illegally, any finding relating to the possibility of future deportation requires the trial court to rely heavily on speculation as to what *may* happen in the future. Such a speculative finding would generally not be supported by the record before the

trial court. That is the case here. Again, Lothvilaythong has failed to present any evidence demonstrating that he will be deported or that deportation is even likely. Thus, we conclude that Lothvilaythong has failed to demonstrate that the trial court's determination relating to his immigration status and possible future deportation constituted an abuse of discretion.[1]

## II. Appropriateness of Sentence

[18] Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

---

[1] In reaching this conclusion we observe this court's prior conclusion that one's immigration status may, under some circumstances, be considered to be a valid aggravating factor at sentencing. *See Guzman v. State*, 985 N.E.2d 1125, 1132 (Ind. Ct. App. 2013) (providing that one's status as an illegal immigrant may be considered to be a valid aggravating factor at sentencing because said status demonstrates a disregard for the law, including immigration laws).

[19]     In challenging the appropriateness of his sentence, Lothvilaythong argues that the nature of his offenses "cannot be viewed as significant [so] to order an aggravated thirty-five (35) year sentence." Appellant's Br. p. 12. To say the least, we find this argument to be less than compelling. Lothvilaythong took advantage of his young daughter by committing sexual misconduct upon her. He threatened to punish her by spanking her and locking her in a closet if she reported his actions. J.L.'s mother indicated during the sentencing hearing that J.L. has suffered pain and nightmares as a result of Lothvilaythong's actions.

[20]     With respect to his character, Lothvilaythong argues that his character is such that a thirty-five-year sentence is inappropriate. In making this argument Lothvilaythong points to the fact that he has no prior criminal history. Lothvilaythong also points to the fact that he has displayed an ability "to navigate and complete court-ordered programs." Appellant's Br. p. 12. While it is true that Lothvilaythong has no prior criminal history and he seems to have completed certain DCS programming, we nonetheless find him to be of poor character. Again, the record reveals that on more than one occasion, Lothvilaythong committed sexual misconduct on his daughter who, at the time, was no more than six years old.

[21]     The Indiana Supreme Court has held that a harsher sentence is more appropriate when the defendant has violated a position of trust that arises from a particularly close relationship between the defendant and the victim, such as a parent-child relationship. *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011). Lothvilaythong's actions and character reveal that he violated such a position of

trust by committing sexual misconduct on his young daughter. Lothvilaythong has failed to meet his burden of persuading us that his aggregate thirty-five-year sentence is inappropriate.

## Conclusion

[22] In sum, we conclude that the trial court acted within its discretion in sentencing Lothvilaythong and that Lothvilaythong failed to meet his burden of proving that his aggregate thirty-five-year sentence is inappropriate.

[23] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.