## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 27 2016, 7:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Office of the Lake County
Public Defender
Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jariel Patterson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 27, 2016<br><br>Court of Appeals Case No.<br>45A03-1508-CR-1199<br><br>Appeal from the<br>Lake Superior Court<br><br>The Honorable<br>Salvador Vasquez, Judge<br><br>Trial Court Cause No.<br>45G01-1410-F3-13 |

**Kirsch, Judge.**

Following his guilty plea to rape[1] as a Level 3 felony, Jariel Patterson ("Patterson") appeals his ten-year sentence, raising the following restated issues:

> I. Whether the trial court abused its discretion when imposing Patterson's sentence; and

> II. Whether Patterson's ten-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## Facts and Procedural History

Patterson lived down the street from S.L. in Gary, Lake County, Indiana.[2] On August 20, 2014, S.L. was at home asleep in her bed. Because S.L. had consumed alcoholic beverages that same night, she was in a very deep sleep. Patterson, who was eighteen years old at the time, entered S.L.'s house, went into her bedroom, pulled off S.L.'s underwear, and "put his penis into her vagina" while S.L. was asleep. *Appellant's App.* at 19. Upon waking up and finding Patterson on top of her, S.L. pushed at his arms. Patterson then stood up, pulled up his pants, and before leaving, told S.L., "[Y]our shit is good." *Id*. A sexual assault examination found Patterson's DNA on S.L. Further,

---

[1] *See* Ind. Code § 35-42-4-1(a).

[2] As part of his plea agreement, Patterson signed a "Stipulated Factual Basis." *Appellant's App.* at 19. That document is the source of most of the facts set forth in this decision.

Patterson admitted that he "knowingly and intentionally [had] sexual intercourse with [S.L.] when she was unaware that sexual intercourse was occurring, thereby committing the offense of Rape, a Level 3 felony." *Id*. On October 10, 2014, the State charged Patterson with one count of Level 3 felony rape and one count of Level 4 felony burglary.

[4] Approximately one month after committing the rape, but prior to being charged with the present offense, Patterson was charged with Level 3 felony armed robbery, Level 5 felony intimidation, Level 6 felony intimidation, and Class B misdemeanor battery under Cause Number 45G01-1410-F3-10 ("Cause F3-10"). *Id*. at 16. On April 22, 2015, pursuant to a written plea agreement, Patterson agreed to plead guilty to the rape count, and in exchange, the State agreed to dismiss the burglary count as well as all of the counts alleged in Cause F3-10. Both parties agreed that they were free to argue their respective positions regarding the sentence, but that the maximum sentence would be capped at twelve years executed. The trial court accepted Patterson's guilty plea, ordered a presentence report, and set a sentencing hearing for May 20, 2015.

[5] At the sentencing hearing, the trial court recognized the following aggravating and mitigating factors. In aggravation, the court noted Patterson's juvenile adjudications, the nature of the offense, and that prior attempts at leniency by the juvenile court had had no deterrent effect on his criminal behavior. *Id*. at 23-24. In mitigation, the trial court recognized that Patterson had pleaded guilty and admitted responsibility. Following the hearing, the trial court

ordered Patterson committed to the Indiana Department of Correction ("DOC") for a term of ten years executed. Patterson now appeals that sentence.[3]

## Discussion and Decision

## I. Abuse of Discretion

[6] Patterson contends that the trial court abused its discretion in sentencing. Generally speaking, sentencing decisions are left to the sound discretion of the trial court, and we review the trial court's decision only for an abuse of that discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id*. A trial court may abuse its discretion by: (1) failing to enter a sentencing statement at all; (2) relying on aggravating or mitigating factors that are not supported by the record; (3) failing to find factors that are clearly supported by the record and were advanced for consideration; or (4) relying on reasons that are improper as a matter of law. *Singh v. State*, 40 N.E.3d 981, 987 (Ind. Ct. App. 2015) (citing *Kimbrough v. State*, 979 N.E.2d 625, 628 (Ind. 2012)), *trans. denied*. The trial court, however, has no obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence and "thus a trial court can not now be said to have abused its discretion in failing to properly

---

[3] Patterson petitioned for and was granted the right to file a belated appeal. Patterson's belated notice of appeal was filed with our court on August 20, 2015.

weigh such factors." *Kimbrough*, 979 N.E.2d at 628 (quoting *Anglemyer*, 868 N.E.2d at 491) (internal quotation marks omitted).

## *A. Aggravating Factors*

[7]    Patterson challenges the trial court's use of the following aggravating factors in sentencing:  (1) Patterson's juvenile record; and (2) prior attempts at leniency by the juvenile court had had no deterrent effect on Patterson's criminal behavior. As to the first claim, it is important to note that Patterson does not argue that his juvenile record is an invalid aggravator, nor could he.  It is well-established that prior juvenile adjudications validly may be considered as an aggravating factor.  Ind. Code § 35-38-1-7.1 (person's criminal history or delinquent behavior is valid aggravating factor to be used in determining what sentence to impose); *see Sexton v. State*, 968 N.E.2d 837, 841 (Ind. Ct. App. 2012) ("The Supreme Court has upheld the use of prior juvenile adjudications to enhance a sentence on multiple occasions."), *trans. denied*.  Nor does he argue that the trial court erred in finding that he had a juvenile record comprised of a 2009 adjudication for burglary and a 2013 adjudication for possession of marijuana, both of which would have been felonies if committed by an adult.  Instead, Patterson claims that the trial court gave his juvenile record too much weight because his prior adjudications were allegedly not serious and too distant in time. *Appellant's Br*. at 5.  Where, as here, the aggravator is valid and the record supports evidence of the existence of the aggravator, a claim that a trial court abused its discretion in sentencing must fail.  "[T]he trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other

when imposing a sentence, unlike the pre-*Blakely* statutory regime, a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors." *Anglemyer*, 868 N.E.2d at 491. The trial court did not abuse its discretion in considering Patterson's juvenile record in sentencing.

[8] The same reasoning applies to Patterson's challenge of the trial court's use of prior leniency by the juvenile courts as an aggravating factor. Patterson claims he was not given lenient treatment; in support, Patterson cites to the fact that the juvenile court placed him with the DOC. *Appellant's Br*. at 5. While it is true that the juvenile court ultimately placed Patterson with the DOC, Patterson glosses over the more lenient placements he was granted, and the number of times he failed in those placements. Those attempts included "in-house detention, stayed commitment to the Lake County Juvenile Center, formal probation, home-based counseling, in-house arrest, placements at Willowglen Academy and at Campagna Academy, stayed commitment to the DOC, and intensive probation." *Appellee's Br*. at 11 (citing *Appellant's App.* at 52). None of those attempts succeeded in altering Patterson's behavior, which eventually left the juvenile court with no option but a DOC commitment. The fact that the court ultimately had to impose such a commitment, however, does not mean that the court did not first try more lenient measures. Patterson does not contend that leniency is an invalid aggravator, nor does he deny that he "did have violations of conditions imposed by the juvenile court." *Appellant's Br*. at 5. Again, Patterson's claim relates to the weight that the trial court accorded this aggravator. Because a trial court cannot now be said to have

abused its discretion in failing to properly weigh such factors, we again find that the trial court did not abuse its discretion.[4]

### B. Mitigating Factors

Patterson next contends that the trial court abused its discretion when it failed to find the following were mitigating factors: (1) Patterson's youthful age; and (2) his remorse. Because the trial court's recitation of its reasons for imposing Patterson's sentence included a finding of mitigating circumstances, "the trial court was required to identify all significant mitigating circumstances." *Anglemyer*, 868 N.E.2d at 492-93. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 493. "However, 'If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist.'" *Id.* (quoting *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993)).

Patterson is incorrect in his assertion that the trial court overlooked his age or remorse as a mitigating factor. As to the first claim, the trial court was

---

[4] Patterson also contends that the trial court should not have considered as an aggravating factor that his sister "smirked and giggled" during her testimony. *Appellant's Br.* at 5. The trial court did, indeed, comment on what it deemed to be the inappropriate demeanor of Patterson's sister during her testimony. *Record of Sentencing Tr.* at 35. He also stated that she was treating the proceedings like it was "a big joke," but that "the joke's on her because now her brother goes to prison." *Id.* While it was imprudent for the trial court to make the latter comment, we find no evidence that the trial court used Patterson's sister's demeanor as an aggravating factor.

reminded during defense counsel's closing remarks that Patterson turned nineteen years old while in prison. During its sentencing statement, the court commented on Patterson's age as follows: (1) stating that it gave the court "no pleasure" to "put an 18, 19-year old in prison for a period of time"; (2) noting that this crime was "a big deal for an 18 year old, now 19, who aged up as a full-blown adult" because of it; and (3) giving consideration to Patterson's guilty plea "because [he was] a young man"—despite the significant benefit Patterson received from the plea. *Record of Sentencing Tr.* at 32, 34, 36. Patterson's age was brought to the attention of the trial court, and the trial court considered it; even so, the trial court chose not find age was a mitigating factor. Because the trial court was under no obligation to explain its reasoning, the trial court did not abuse its discretion in finding that Patterson's young age was not a mitigating factor. *Anglemyer*, 868 N.E.2d at 493; *Fugate*, 608 N.E.2d at 1374.

[11] Patterson also asserts that his remorse was a mitigating factor. Regarding remorse, "[W]e give substantial deference to the trial court's evaluation because it may observe the defendant and is therefore in the best position to determine whether the remorse is genuine." *Webb v. State*, 941 N.E.2d 1082, 1089 (Ind. Ct. App. 2011), *trans. denied.* Patterson's sole expression of remorse came at the sentencing hearing, when he stated, "I want to apologize to the victim for the-- for the wrongdoing I have did [sic]. I want to apologize to my family and friends for all the suffering I have put them through." *Record of Sentencing Tr.* at 30. The trial court had the opportunity to view Patterson's demeanor to assess how genuine he appeared when he spoke these words. Moreover, Patterson's

brief statement of apology must be measured against his total lack of remorse at the time of his crime when, after raping the victim and before leaving, he told her "your shit is good." *Appellant's App.* at 19. Again, the trial court was under no obligation to explain its reasoning. The trial court was well within its discretion in determine that Patterson's demeanor and words did constitute the degree of remorse that could rise to the level of being a mitigating factor. The trial court did not abuse its discretion in sentencing Patterson.

## II. Appellate Rule 7(B) Analysis

[12] Patterson requests that this court revise his ten-year executed sentence. Under Indiana Appellate Rule 7(B), "such relief is available if, 'after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.'" *Helsley v. State*, 43 N.E.3d 225, 227 (Ind. 2015) (quoting Ind. Appellate Rule 7(B)). Although "'Rule 7(B) does not require us to be extremely deferential to a trial court's sentencing decision, we still must give due consideration to that decision.'" *Delao v. State*, 940 N.E.2d 849, 853 (Ind. Ct. App. 2011) (quoting *Patterson v. State*, 909 N.E.2d 1058, 1062-63 (Ind. Ct. App. 2009)), *trans. denied*. We understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id*.

[13] The principal role of appellate review is to "leaven the outliers"; it is not to achieve a perceived "correct" result. *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). Thus, the "question under Appellate Rule 7(B) is not

whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Helsley*, 43 N.E.3d at 227 (emphasis in original) (citation omitted). The defendant bears the burden of persuading this court that his or her sentence is inappropriate. *Kunberger,* 46 N.E.3d at 972.

[14]     As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Id*. at 973. Here, Patterson pleaded guilty to rape, a Level 3 felony. The sentencing range for a Level 3 felony is between three and sixteen years, with the advisory sentence being nine years. Ind. Code § 35-50-2-5(b). The trial court sentenced Patterson to a term of ten years executed. Patterson maintains that his sentence is inappropriate in light of the nature of the offense because he did not compel S.L. by force or imminent threat of force, there was no evidence that he caused serious pain or permanent injury, and there was no evidence that S.L. was so incapacitated that she was unable to consent. *Appellant's Br*. at 8. We disagree with Patterson's characterization of the nature of the crime. Patterson broke into S.L.'s home in the middle of the night while she was sleeping. S.L., who had been drinking earlier in the evening, was in a deep sleep while Patterson entered her bedroom, removed her underwear, and raped her. When S.L. awoke, she found Patterson on top of her. S.L. pushed Patterson's arms, at which time Patterson got up and put his pants on. We cannot say that Patterson's sentence for a term of ten years is inappropriate in light of the nature of the offense.

Patterson cites to his young age, his plea of guilty, and his expression of remorse as evidence of his good character. We are not persuaded. As we stated above, the trial court was presented with evidence of Patterson's young age and of his statements of "remorse," but was unpersuaded that these were significant factors to consider in sentencing. Further, Patterson's decision to enter into a guilty plea appears to have been a pragmatic one.[5] Patterson's character is more clearly reflected in his juvenile record, which reveals an adjudication for burglary in 2009 and one for possession of marijuana in 2013, both of which would have been felonies if committed by an adult. From 2009 through 2013, Patterson failed at programs involving in-home detention, formal probation, and intensive probation, among others. At the time of sentencing, Patterson's pending charges of robbery by force, intimidation, and battery were dismissed. In the present case, Patterson was sentenced to a term that was one year longer than the advisory sentence and two years less than the agreed-upon sentence cap. We cannot say that Patterson's sentence is inappropriate in light of the nature of the offense or the character of the offender.

[16] Affirmed.

[17] Riley, J., and Pyle, J., concur.

---

[5] Patterson initially entered a plea of not guilty in October 2014. The State filed a motion for buccal swab in November 2014, but at Patterson's request, the hearing on that motion was reset to December 2014. On April 14, 2015, the State filed supplemental discovery notifying Patterson that the State intended to add as a witness a DNA analyst from the Indiana State Police Laboratory. *Appellant's App.* at 13. One week later, Patterson entered into the plea agreement.